Bryson R. Brown (Utah Bar No. 14146)
Heather L. Thuet (Utah Bar No. 10106)
Phillip S. Ferguson (Utah Bar No. 1063)
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84101
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
phillip.ferguson@chrisjen.com
heather.thuet@chrisjen.com
bryson.brown@chrisjen.com
*Attorneys for Defendant GhostBed, Inc. GhostBed*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| PURPLE INNOVATIONS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HONEST REVIEWS, LLC, a Florida corporation, RYAN MONAHAN, an individual, and GHOSTBED, a Delaware corporation,<br><br>Defendants. | **DEFENDANT GHOSTBED, INC.'S COMBINED MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER AND DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Case No. 2:17-cv-00138<br><br>Judge: Dee Benson |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant GhostBed, Inc. ("GhostBed"), respectfully submits this combined motion and memorandum of law to dissolve the Court's Temporary Restraining Order (Dkt. 16, entered March 2, 2017, "the TRO") and dismiss Plaintiff's Complaint (Dkt. 2) as to GhostBed for failure to state a claim upon which relief may be granted.

## INTRODUCTION

GhostBed does not belong in this lawsuit. Plaintiff Purple Innovations, LLC ("Purple") alleges that certain statements about Purple's products on the website honestmattressreviews.com are misleading and have caused it irreparable harm. (Dkt. 2, Compl. at ¶¶ 1-5; Dkt. 8, Application for the TRO at ii-iii.) But GhostBed does not own, operate, or contribute to the honestmattressreviews.com website in any way. (*See* Dkt. 31, Declaration of M. Werner, dated March 8, 2017 ("Werner Decl.") at ¶¶ 3-6.) Because the statements or omissions on the website were, on their face, made by parties other than GhostBed, they are not actionable against GhostBed as false advertising or anything else. Purple's claims fail for this reason alone.

Purple nevertheless asks this Court to *impute* the publication of the website posts to GhostBed because GhostBed "directly or indirectly – and surreptitiously – work[ed] with [co-defendants Honest Reviews, LLC and Mr. Monahan] to make [these] false and misleading statements of fact" about Purple. (Compl. at ¶¶ 5, 130-132.) Purple's self-serving speculation suggesting a conspiracy among the defendants – made only "on information and belief" – is absurd on its face. There is no evidence that GhostBed had any knowledge or involvement, let alone any control, over what Mr. Monahan and Honest Reviews, LLC chose to say when conveying information about Purple in the website articles. (Werner Decl. at ¶¶ 3-7.) Instead, the evidence shows that:

- GhostBed does not own or control the honestmattressreviews.com website.
- GhostBed did not publish – nor did it direct, or otherwise suggest to anyone to publish – any content on the honestmattressreviews.com website.
- GhostBed does not currently employ (and has never employed) Mr. Monahan.

- GhostBed is not compensating Mr. Monahan or Honest Reviews, LLC in any way, directly or indirectly, in connection with the honestmattressreviews.com website.

(Werner Decl. at ¶¶ 9-11, 15-20; Dkt. 30, Declaration of R. Monahan, dated March 7, 2017 ("Monahan Decl.") at ¶ 12.) The inclusion of GhostBed in this case is a thinly-veiled attempt by Purple to transmute plainly-protected free speech into a fictional plot to undermine a competitor. Under well-established federal pleading standards, though, Purple's allegations do not survive this motion. Purple's Complaint against GhostBed must therefore be dismissed and the TRO dissolved.

## STATEMENT OF FACTS

Purple alleges that GhostBed competes against Purple in the bed-in-a-box market. (Dkt. 2, Compl. at ¶ 1.) The Complaint alleges that false and misleading statements about Purple were published on honestmattressreviews.com, a website that allegedly denigrated Plaintiff and its products. (*Id*. at ¶ 2.) The Complaint does not allege or identify any actual false statement about Purple made by GhostBed. (*Id.*, *passim.*)

Plaintiff alleges – on information and belief – that the honestmattressreviews.com website and its operator, Mr. Monahan, failed to disclose an alleged connection to GhostBed on the website. (*Id*. at ¶¶130-32.) For example, Plaintiff claims that the website "makes a number of purported 'disclaimers'…which are also false and misleading. Among other things, [co-defendants Honest Reviews, LLC and Mr. Monahan] purport to be independent and unaffiliated with any particular mattress company, such that their reviews are entirely without bias, but they fail to disclose that Monahan has or had in the past very close ties to GhostBed," (*id*. at ¶ 3). Plaintiff goes on to allege that Monahan was "previously employed as GhostBed's Chief Brand Officer," (*id.* at ¶¶ 3, 117) and there is a "*possibility* that [co-defendants Honest Reviews, LLC and Mr.

Monahan] receive direct or indirect payments or other valuable consideration, including without limitation advertising income from favorably-reviewed companies," like GhostBed. (*Id*. at ¶ 4, emphasis added).

Plaintiff's primary bases for claiming Mr. Monahan is or was an employee of GhostBed are screenshots of Mr. Monahan's old LinkedIn and Twitter profiles. (*Id*. at ¶¶ 122-128.) Plaintiff admits that both of those profiles are out-of-date. (*Id*. at ¶¶ 126, 128.) Plaintiff also lays out a series of unsupported allegations, all based upon "information and belief," that Defendants are working together and "acting in concert" "to promote GhostBed products over those of other manufactures [sic]…*likely* in exchange for some form of financial or other remuneration...," (*id*. at ¶¶ 130-132, emphasis added).

In reality, Ghostbed does not own, control, operate, or contribute in any way to the honestmattressreviews.com website. (Werner Decl. at ¶ 5.) GhostBed does not have any affiliation whatsoever with co-defendant Honest Reviews, LLC, which is an entity that GhostBed believes is owned and operated by Mr. Monahan alone. (*Id*. at ¶ 6.) GhostBed has not, and does not, remunerate Mr. Monahan or Honest Reviews, LLC in any way for anything they do in connection with the website. (*Id*. at ¶ 7; Monahan Decl. at ¶ 12.)

GhostBed first learned of the existence of posts to the honestmattressreviews.com website after they became available to the general public. (Werner Decl. at ¶¶ 9-10.) GhostBed did not author, direct, or otherwise authorize or contribute to the posts or their publication on the website. (*Id*.) GhostBed had no knowledge of the posts or their content prior to publication. (*Id*.)

Although Mr. Monahan has been indirectly retained as a consultant by one of GhostBed's vendors on occasion, Mr. Monahan is not, and has never been, an employee of GhostBed. (*Id*. at

¶ 11.) Mr. Monahan does not have an office at GhostBed, or a phone extension, or an email address. (*Id*. at ¶¶ 15-19.) Mr. Monahan cannot be reached by calling the number on the GhostBed's website. (*Id*. at ¶ 18.)

Purple filed its first application for the TRO (Dkt. 8)[1] on February 27, 2017, and then a "supplemental brief" in support of its application on February 28, 2017. (Dkt. 11.) In that supplemental brief, Purple alleged that it had learned "[j]ust th[at] morning" of "additional, critical facts supporting the immediate issuance of" the TRO. (*Id*. at 2.) In particular, Purple alleged that it:

> confirmed that Monahan in fact maintains a *current* business relationship with GhostBed. Monahan – who is the CEO and primary architect of HMR and the Blog – is actually member of GhostBed's marketing department, and thus an employee or contractor of the company, and as such he necessarily has a monetary interest in the success of GhostBed, if he does not also receive direct compensation for GhostBed's favorable reviews on the Blog. In addition, Monahan maintains an office at GhostBed's headquarters, he can be reached by calling GhostBed's main telephone number, and the email address provided by GhostBed for Monahan is 'marketing@ghostbed.com.'

*Id*. at 2 (emphasis in original). This so-called "confirmation" was apparently based upon a phone call made by Purple's own paid private investigator to GhostBed's general customer service hotline. (*Id*.) However, GhostBed's customer service representative – a recently hired staffing agency contractor with no training in the corporate structure of GhostBed and acting out of his home – did not confirm any of the allegations made by Purple. Instead, the *investigator* informed this new customer representative that there was an employee named Monahan and the customer representative stated that he was possibly in the northeast. (Dkt. 31, Ex. 1, Transcript of Telephone

---

[1] That first application was denied by the Court on March 1, 2017 (Dkt. 13). Plaintiff re-filed its application on March 1, 2017 (Dkt. 15), and the TRO was granted on March 2, 2017 (Dkt. 16).

Call ("Transcript") at 2-3.) But he was mistaken. An investigator's trick does not make Mr. Monahan an employee of GhostBed.

## LEGAL STANDARD

To survive a motion to dismiss, the Plaintiff must do more than merely state legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Burnett v. Mortg. Elec. Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). Instead, a plaintiff must offer specific factual allegations to support each claim. The complaint must include "[f]actual allegations [sufficient] enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

## ARGUMENT

**ALL CLAIMS AGAINST GHOSTBED SHOULD BE DISMISSED WITH PREJUDICE BECAUSE GHOSTBED HAD NOTHING TO DO WITH THE WEBSITE AT ISSUE.**

Plaintiff's claims against GhostBed for false advertising under the Lanham Act, tortious interference with economic relations, defamation, and trade libel must be dismissed because all of the posts on the honestmattressreviews.com website that form the basis for Purple's causes of action were not made by, and cannot be imputed to, GhostBed as a matter of law.

Purple alleges that the honestmattressreviews.com website contains certain statements about Purple's products that are causing Purple irreparable harm. (Dkt. 2, Compl. at ¶¶ 1-5.) But

its causes of action against GhostBed in particular, which all require some act on GhostBed's part,[2] must fail because GhostBed does not own, control, operate, or contribute in any way to the honestmattressreviews.com website. In fact, Purple *itself* tacitly admits that GhostBed does not own or operate the website. (*Id*. at ¶¶ 8 ("Monahan is the owner, Editor in Chief, and primary architect [of the website]); 119 ("…Monahan is sole the owner [sic] of [the website]"); 171.) In fact, the Complaint and application for the TRO are devoid of factual allegations that GhostBed had any knowledge or involvement, let alone control, over what Mr. Monahan, or any other individual, chose to use on the honestmattressreview.com website. Nevertheless, Purple improperly lumps all of the Defendants together throughout the Complaint and the application for the TRO.

Apparently realizing that its allegations concerning GhostBed's involvement with the website are tenuous at best, Purple's pleadings set forth a conspiracy theory and suggest that it is a "possibility" that GhostBed is somehow pulling the strings of the actual actors. (Compl. at ¶¶ 4-5, 130-132.) But the evidence shows that GhostBed does not have any affiliation whatsoever with co-defendant Honest Reviews, LLC, which is an entity that GhostBed believes is owned and operated by Mr. Monahan alone. (Werner Decl. at ¶¶ 3-7.) And GhostBed has not, and does not, remunerate Mr. Monahan or Honest Reviews LLC in any way for anything they do in connection with the website. (*Id*. at ¶ 7.) Mr. Monahan is not, and has never been, an employee of GhostBed.

---

[2] It is black-letter law that to prevail on its false advertising claims, Plaintiff must prove a false statement of fact by GhostBed in a commercial advertisement about its own or another's product that GhostBed caused to enter interstate commerce. Because GhostBed did not make or contribute to any statement at all, Purple's claim under the Lanham Act must fail. Furthermore, all of Plaintiff's remaining claims, which are each premised on the exact same non-actionable statements that cannot be attributed to GhostBed, must likewise be dismissed.

Mr. Monahan does not have an office at GhostBed, or a phone extension, or an email address. (*Id*. at ¶¶ 11, 15-19.) Nor can Mr. Monahan be reached by calling the number on the GhostBed's website. (*Id*. at ¶ 18.)

Purple attempts to save its case by manufacturing a relationship between GhostBed and Monahan that simply does not exist and cannot be shown to exist. GhostBed, at one time, hired branding and marketing consultant Big Couch Media Group (now known as "Achieve") to consult with GhostBed regarding its online presence. (*Id*. at ¶ 12.) GhostBed understands and believes that Achieve used and uses an organization affiliated with Mr. Monahan as an outside consultant to consult on online presence issues for several mattress companies. (*Id*.) But Mr. Monahan has never, and is not now, working for GhostBed in connection with any competitive marketing concerning Purple or anyone else. (*Id*. at ¶¶ 6-11.) Mr. Monahan is not, and has never been, "Chief Brand Officer" at GhostBed. (*Id*. at ¶ 13.) Although Mr. Monahan, at one time, mistakenly identified himself on Twitter and LinkedIn as "Chief Brand Officer," he immediately deleted the references when GhostBed asked him to. (*Id*. at ¶ 14.) This occurred well before the activities involved in this case took place. (*Id*.)

Purple recently suggested that it uncovered "new" evidence that Mr. Monahan is *currently* employed by or affiliated with GhostBed. (Dkt. 11 at 2.) This so-called "confirmation" was apparently based upon a phone call made by Purple's own paid private investigator to GhostBed's general customer service hotline. (*Id*. at Ex. 1 at ¶¶ 2-4.) But the transcript of the actual phone call between Purple's investigator and the customer service representative does not support Purple's claims. (Dkt. 31, Exhibit 3, Transcript at 2.) Further, the mere fact that an investigator fooled a

new customer representative working out of his home is no evidence other than proof of the power of suggestion.

The person that answered the call is a GhostBed contractor that works for a staffing agency and has a very limited scope of responsibility. (Werner Decl. at ¶¶ 25-27.) He is trained to answer substantive questions from customers about GhostBed's product as quickly as possible and then to move on to the next caller. (*Id*. at ¶ 28.) He has not been trained in the corporate structure of GhostBed. (*Id*. at ¶ 27.) When faced with questions outside of the scope of his training, he is instructed to ask to send the inquiries to general e-mail addresses and move on to the next caller. (*Id*. at ¶ 28.)

The transcript makes plain that the customer service representative did not know who Purple's private investigator was calling about. Contrary to Purple's allegations, the contractor did not "confirm" that Mr. Monahan was, in fact, an employee of GhostBed. Rather, he said he could ***not*** provide a job title. (*Id*. at ¶¶ 30-34; Transcript at 2.) The contractor did ***not*** "confirm" that Mr. Monahan has a GhostBed phone extension, and in fact, when asked for one, he put Purple's investigator on hold for six minutes (presumably looking for the non-existent number) and then told Purple's investigator specifically that he was *unaware* of any direct phone line for Mr. Monahan. He instead suggested the caller should email the general marketing email address instead. (*Id*.) He did ***not*** "confirm" that the general marketing address is Mr. Monahan's address or that Mr. Monahan has a GhostBed email address at all. (*Id*.) The email address marketing@ghostbed.com is for Calisha Anderson, GhostBed's Director of Marketing. (Werner Decl. at ¶ 34.)

Purple's conclusory allegations of a co-conspirator relationship among the Defendants are insufficient to impute any of the specific alleged conduct to GhostBed. And its attempted entrapment of a GhostBed customer service representative with vague questions underscores how far Purple is willing to go to keep GhostBed in this case. But in the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim. *See Walker v. Hickenlooper*, 627 F. App'x 710, 715 (10th Cir. 2015) (*citing Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013) for the proposition that "a plaintiff's allegations on information and belief, without supporting factual assertions, are insufficient to state a valid claim regarding a defendant's alleged action"). Purple's Complaint should therefore be dismissed.

## THE TRO SHOULD BE DISSOLVED

Rule 65, Federal Rules of Civil Procedure, governs the issuance of temporary restraining orders and preliminary injunctions. Rule 65 requires that Purple show that irreparable injury will occur before GhostBed or its attorney can be heard. That showing was not made here for several reasons.

First, an examination of the Complaint and accompanying papers in this case demonstrate that there has been no attempt to show any immediacy of harm or likelihood of success. *Gen. Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007). In fact, it appears that the website that Purple complains about has been available to the public for several *months*. There is no allegation or argument that explains why the passage of a few days to allow GhostBed to respond would cause irreparable harm, given the long time that the website and its information have been available to the public, not to mention all of the additional time Purple took to draft its

Complaint and hundreds of pages of additional pleadings in this case. For this reason alone, the TRO now be dissolved.

Second, the papers filed by Purple in this case were not supported by admissible evidence demonstrating that immediate and irreparable injury will result to Purple before the defendants could be heard in opposition. Purple's allegations concerning GhostBed's involvement in this matter are all made upon "information and belief" and include speculative hedge-words like *if, possibility,* and *likely*. (Dkt. 2, Compl. at ¶¶ 4, 131; Dkt. 8 at v.) But "[b]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal," *Greater Yellowstone Coal. v. Flowers,* 321 F.3d 1250, 1256 (10th Cir. 2003), and allegations based on information and belief are insufficient to carry that burden. Purple was required to set forth such facts as would be admissible in evidence. It did not. The TRO should therefore be dissolved.

Third, as shown above, Purple has not produced any credible evidence showing that it is substantially likely to prevail on its claims. Instead, Purple has relied on allegations lacking evidentiary support, and now asks this Court to infer conclusions. In contrast, Defendants have provided affidavits based on first-hand knowledge that negate Purple's allegations and the conclusions it urges this Court to infer. (*See, e.g.,* Dkt. 30, 31.) The circumstances do not justify a sweeping restriction on GhostBed, particularly where, as here, GhostBed had absolutely nothing to do with the allegedly offending website.

Fourth, as it stands, GhostBed is not in a position to take any of the steps required by the TRO. GhostBed does not control or operate the website, so it cannot take any of the actions to remove the offending statements as required by the Court. (Werner Decl. at ¶¶ 35-37.) Likewise, GhostBed has not made any "online promotion" of the statements on the website anywhere, so it

cannot "cease from any online promotion of the statements [made on the website], including through any Facebook advertising or promotion." (*Id*. at ¶ 36.) The affirmative steps ordered in the TRO simply do not apply to GhostBed. For all of these reasons, the TRO should be dissolved as to GhostBed.

## CONCLUSION

GhostBed has no association whatsoever with the honestmattressreviews.com website, the only place where Purple claims harmful statements are being made. Purple's allegations seeking to impute liability onto GhostBed are too speculative to survive this motion. Purple's Complaint therefore fails to plausibly state any claims for relief against GhostBed. The Complaint should be dismissed pursuant to Rule 12(b)(6), and the TRO should be dissolved.

DATED this 9th day of March, 2017.

CHRISTENSEN & JENSEN, P.C.

s/ Bryson R. Brown
Phillip S. Ferguson
Heather L. Thuet
Bryson R. Brown
*Attorneys for Defendant GhostBed, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of March, 2017, I caused a true and correct copy of this **DEFENDANT GHOSTBED, INC.'S COMBINED MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER AND DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT** to be filed via the Court's CM/ECF Filing System which sent notification of such filing on the following:

>James E. Magleby (magleby@mcgiplaw.com)
>Christine T. Greenwood (greenwood@mcgiplaw.com)
>Adam Alba (alba@mcgiplaw.com)
>MAGLEBY CATAXINOS & GREENWOOD
>170 South Main Street, Suite 1100
>Salt Lake City, UT 84101
>*Attorneys for Plaintiff*

>W. Andrew McCullough (wandrew48@ymail.com)
>6885 South State, Suite 200
>Midvale, UT 84047
>*Attorneys for Honest Reviews & Ryan Monahan*

                                                                            s/Bryson R. Brown