FILED
U.S. DISTRICT COURT
2017 NOV -7 ᗞ 2: 04
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PURPLE INNOVATION, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HONEST REVIEWS, LLC, a Florida corporation, RYAN MONAHAN, an individual, and GHOSTBED, INC., a Delaware corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:17-cv-138-DB<br><br>District Judge Dee Benson |

Before the court is Defendants Honest Mattress Reviews, LLC ("HMR") and Ryan Monahan's (collectively, the "Monahan Defendants") Motion to Stay and Dissolve Preliminary Injunction Pending Appeal. (Dkt. No. 196.) In their Motion, the Monahan Defendants request that the court stay and dissolve the Preliminary Injunction entered on September 22, 2017, pending final resolution of Defendants' appeal of the order.

## FACTS

Defendant HMR is a website that purports to provide independent reviews of mattresses and related products. During the past year, Purple Innovations, LLC ("Purple") has been a repeated target of derogatory posts on the HMR site. These posts include inflammatory articles about the powder used on the Purple mattress, which attempt to draw a connection between the powder and cancer-causing agents. Although Purple is not the only company to have ever received a negative review on the HMR site, Purple has consistently received low marks,

including large red X's, when its competitors have not. HMR has also prominently displayed on its website an assertion regarding its independence from any mattress company.

HMR supported its assertions of independence (particularly with respect to Defendant GhostBed, Inc.) with two declarations submitted to the court in opposition to the Temporary Restraining Order. The first declaration, submitted by Ryan Monahan, stated that Mr. Monahan is the sole member and president of HMR, that he had previously improperly identified himself as GhostBed's Chief Brand Officer, that he did not have an office or phone number with GhostBed, and that his current relationship with GhostBed was only one of twenty-five accounts that his company, Social Media Sharks, serviced through Achieve Agency. (Dkt. No. 30.) The second declaration, submitted by GhostBed's CEO, Marc Werner, stated that "GhostBed does not have any affiliation whatsoever with co-defendants Honest Reviews LLC or Ryan Monahan" and that "Mr. Monahan is not, and has never been, an employee, director, or officer of GhostBed." (Dkt. No. 31.) The declaration also stated that GhostBed hired Achieve Agency for marketing consulting and that "[i]n the past, Achieve used another entity, Social Media Sharks, to consult on online presence issues for its clients, including GhostBed." (*Id.*)

The veracity of the Monahan Defendants' assertions of independence was called into question by a subsequent declaration submitted by the recently-terminated Director of Marketing for GhostBed, Calisha Anderson. (Dkt. No. 137.) In her Declaration, Ms. Anderson stated that, during her tenure as Director of Marketing for Ghostbed, she had "very little actual authority for GhostBed's marketing" and that Monahan "was the real 'Director of Marketing.'" (*Id.* at ¶¶ 5, 8.) Monahan "controlled every aspect of the GhostBed website from before the time [Anderson] was hired until the day that [she] left GhostBed." (*Id.* at ¶ 11.) Monahan attended GhostBed staff

meetings telephonically and "led the discussion" regarding marketing. (*Id.* at ¶ 16.) Monahan "frequently used the email address ryan@ghostbed.com to communicate with others, including in the system used to send out email blasts." (*Id.* at ¶ 43.) Monahan "was the Chief Brand Officer of GhostBed, and he held himself out as such in his communications with others...." (*Id.* at ¶ 41.) During Anderson's employment, Monahan spoke on the telephone regularly with Werner, visited GhostBed's offices from time to time, and went to Werner's house for dinner. (*Id.* at ¶¶ 17, 21.)

On September 16, 2017, the court held an evidentiary hearing and heard the testimony of Mr. Monahan, Mr. Werner, and Ms. Anderson. At the conclusion of the hearing, the court was convinced that the declaration testimony submitted by Mr. Monahan and Mr. Werner was, at best, misleading regarding the Monahan Defendants' assertions of independence from GhostBed. The court heard testimony that Mr. Monahan maintains regular contact with Mr. Werner and other GhostBed representatives. Mr. Monahan's company, Social Media Sharks, continues to receive substantial payments from GhostBed (currently $10,000 per month) for marketing services provided to GhostBed. Mr. Monahan recently and regularly identified himself as GhostBed's Chief Brand Officer. Based on this close personal and financial relationship, the court did not find it credible that HMR's targeted campaign against Purple was that of an independent investigative journalist.

The court also received evidence, including reports from expert witnesses, regarding the supposed connection between Purple's anti-tack powder and cancer or other serious health conditions. None of the evidence presented is sufficient to support the assertion of a causal connection between the anti-tack powder and any serious health condition.

PRELIMINARY INJUNCTION

Based on the evidence presented to the court in the filings of the parties and at the evidentiary hearing, the court issued a Preliminary Injunction with three main components: 1) a requirement that the Monahan Defendants disclose their relationship with GhostBed prominently on the HMR site; 2) a prohibition against "statements or inferences to the effect that Purple uses baby or talc powder on its products, that Purple is affiliated with or similar to Johnson & Johnson, that Purple's products cause cancer, or that Purple's products cause people to cough up blood"; and 3) a prohibition against "statements related to this lawsuit online or elsewhere that misrepresent the nature of the lawsuit or this Court's orders."

ANALYSIS

In determining whether to grant a stay pending appeal, the Court considers the following four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001).

First, the Monahan Defendants have not made a strong showing that they are likely to succeed on the merits of the Preliminary Injunction appeal. The Monahan Defendants primarily argue that the Preliminary Injunction constitutes a prior restraint of First Amendment protected speech and, as such, cannot stand. However, the evidence before the court demonstrates that: 1) the HMR Defendants are not independent from GhostBed, either personally or financially; and 2) Defendants have provided no evidence to show that Purple's products could or do cause

cancer or cause other serious injuries, such as coughing up blood. As such, the Preliminary Injunction prohibits only "false or misleading" statements that are likely to cause confusion or are misrepresentative of the nature of a party's goods or services, in keeping with the Landham Act. 15 U.S.C. § 1125(a).

Second, the Monahan Defendants claim that they will be irreparably harmed by the prior restraint of First Amendment speech. However, the court has determined that the speech to be enjoined is speech that is outside the protection of the First Amendment—false and misleading statements regarding HMR's independence, Purple's products, and this lawsuit. As such, Defendants will not be irreparably harmed from the prohibition of this unlawful speech.

Third, the issuance of a stay will substantially injure the other parties interested in the proceeding. As the court noted in its Preliminary Injunction order, due to the viral and misleading nature of many of the Monahan Defendants' statements, and their close relationship with GhostBed, absent a Preliminary Injunction, Purple will suffer irreparable harm, including loss of good will, reputation, and sales.

Fourth, the court recognizes the strong public interest in upholding free speech principles. However, where, as here, a source closely affiliated with a competitor engages in a smear campaign against a company, the public interest lies in prohibiting the associated false and misleading representations.

## CONCLUSION

For the foregoing reasons, the Monahan Defendants' Motion to Stay and Dissolve is hereby DENIED.

DATED this 7th day of November, 2017.

BY THE COURT:

_Dee Benson_
Dee Benson
United States District Judge