James E. Magleby (7247)
  magleby@mcgiplaw.com
Christine T. Greenwood (8187)
  greenwood@mcgiplaw.com
Adam Alba (13128)
  alba@mcgiplaw.com
**MAGLEBY CATAXINOS & GREENWOOD**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Purple Innovation, LLC

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **PURPLE INNOVATION, LLC,** A Delaware limited liability company,<br><br>Plaintiff,<br>v.<br><br>**HONEST REVIEWS, LLC,** a Florida Corporation, **RYAN MONAHAN**, an individual, and **GHOSTBED, INC.**, a Delaware corporation,<br><br>Defendants. | **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS (RESPONSE TO HONEST REVIEWS AND RYAN MONAHAN'S OPPOSITION)**<br><br><br>Case No.: 2:17-cv-00138-DB<br><br>Honorable Dee Benson |

Plaintiff Purple Innovation, LLC ("Plaintiff" or "Purple"), by and through its counsel of record MAGLEBY CATAXINOS & GREENWOOD, hereby submits this Reply in Support of Plaintiff's Motion for Sanctions (Response to Honest Reviews and Ryan Monahan's Opposition).

## INTRODUCTION

In response to Purple's motion for sanctions (the "Motion"), Honest Reviews, LLC ("Honest") and Ryan Monahan ("Monahan") (collectively the "HMR Defendants") argue that there is "no evidence" that the discrepancies in Monahan's sworn statements were not the result of a mistake or a "lack of recollection." However, the HMR Defendants fail to offer any affirmative evidence that the "discrepancies" were simply a mistake or an oversight. For example, they do not provide a declaration from Mr. Monahan to explain the so-called mistakes, nor do they provide any documents that clarify the so-called mistakes. The HMR Defendants' lack of a meaningful response or clarification of the "discrepancies" is fatal to their opposition (the "Opposition"). The only reasonable conclusion one could make when reviewing the discrepancies is that Monahan intentionally misled the Court and the parties, and he failed to offer truthful testimony when provided the opportunity.

Simply put, the Opposition suffers from the same problems as Monahan's sworn statements; it lacks credibility and has no basis in reality. Accordingly, the Court should sanction the HMR Defendants for Monahan's repeated false statements which have harmed Purple and misled the Court.

**ARGUMENT**

As the HMR Defendants explain, the test for determining whether sanctions are appropriate includes an assessment of the following non-exclusive factors: (1) the degree of actual prejudice to the defendant, (2) the degree of interference with the judicial process, (3) the litigant's culpability, (4) whether the litigant was warned in advance that dismissal was a likely sanction, and (5) whether lesser sanctions would be effective.  See LaFleur v. Teen Help, 342 F.3d 1145, 1151 (10th Cir. 2002) (citing Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992) (affirming dismissal of plaintiff's complaint for failure to appear at deposition and related discovery misconduct).  The HMR Defendants argue that these factors are inapplicable, based largely on the faulty premise that Monahan's false statements *may have been* a mistake or an oversight.  As demonstrated more fully below, these arguments fail.

**I.     MONAHAN'S FALSE STATEMENTS HAVE PREJUDICED PURPLE.**

The HMR Defendants first argue that any harm to Purple from Monahan's statements is based solely on speculation.  This is incorrect.  The Court stated that the declarations from Monahan and Werner are the "predominant" reason for why the Court originally dissolved the TRO, and that the Court "relied" on the declarations.[1]  The Court's statements on those declarations make clear that the harm resulting from the

---

[1] The HMR Defendants argue that the Court's statements regarding the initial declarations were limited to Werner's declaration.  See Opp. at 2.  This argument ignores the fact that Werner's and Monahan's declarations are substantively the same in their description (or their lack of description) of Monahan's ties to GhostBed.  Indeed, the declarations are sufficiently similar enough to raise the question of whether their drafting was coordinated between them or their respective counsel.

2

false statements is based on much more than conjecture or guessing.  In reality, because of Monahan's and Werner's false declarations, Purple was forced to defend against Defendants' motions to dissolve the TRO, file an additional motion for preliminary relief, and seek additional discovery that the HMR Defendants should have provided.  In the meantime, because no injunctive relief was in place, Purple continued to lose sales and goodwill.  This type of harm weighs in favor of Purple's requested sanctions.  See *Whatcott v. City of Provo*, 231 F.R.D. 627, 630 (D. Utah 2005) (finding that party seeking sanctions was harmed by offending party's conduct that caused delay, including delays resulting from the party's failure to respond to discovery, which delays caused the moving party to incur significant attorney fees).

      The HMR Defendants also argue that their failure to produce documents, such as the December 15, 2015 Chief Brand Officer email (the "Chief Brand Officer Email"),[2] should not be held against them because they had no obligation to provide the documents "at the time."  It is unclear what time frame the HMR Defendants are referencing.  However, Purple propounded a set of discovery requests to the HMR Defendants as early as June 14, 2017, which requests asked for, among other things, "[a]ll Communications between [Monahan] and Werner."[3]  Thus, the HMR Defendants should have produced the relevant and responsive documents in mid-July, two months before the hearing on the motion for the preliminary injunction.  Instead, to the best of

---

[2] This email is attached to the Motion for Sanctions as Exhibit 4.

[3] 6-14-17 Documents Requests, portions of which are attached as Exhibit "1."

3

Purple's understanding at this time, the HMR Defendants *still* have not produced the Chief Brand Officer Email, and GhostBed did not produce the Chief Brand Officer Email until October 19, 2017 – more than three months after the documents should have been produced and more than a month after the preliminary injunction hearing.  Had the HMR Defendants produced the relevant documents when they were obligated to do so, they could have potentially saved the parties and the Court a significant amount of time in preparing for, and considering, the motion for preliminary injunction, particularly in light of the Court's determination on July 7, 2017, following the submission of the Declaration of Calisha Anderson, that the focus of the preliminary injunction hearing was to be the relationship between Monahan and GhostBed.[4]  Monahan's failure to produce this key evidence, which goes to the very heart of the issue the Court wanted to address at the hearing, clearly impacted the proceedings and prejudiced Purple.  The Court may certainly consider this fact in determining the prejudice suffered by Purple and the delays caused by Defendants' conduct.

## II. THE HMR DEFENDANTS HAVE NOT JUST ENGAGED THE JUDICIAL SYSTEM, THEY HAVE INTERFERED WITH THE JUDICIAL PROCESS.

With regard to the second factor, the HMR Defendants argue that they have simply "engaged in the same conduct as any reasonable defendant who denies liability." *See* Opp. at 5.  However, making false statements under oath is not the hallmark of a "reasonable defendant who denies liability."  Indeed, such conduct is sanctionable as an

---

[4] *See* Order at 1, July 7, 2017, Dkt. 145 (stating that an evidentiary hearing focused primarily on "the nature of the relationship between" Monahan and GhostBed would aid the Court in ruling on Purple's motion for preliminary injunction).

abuse of the judicial system.  See *Rodriguez v. Presbyterian Healthcare Services*, 11-CV-238, 2012 WL 12896388, *4 (D. N. M. Aug. 22, 2012) (unpublished) "[T]here is no greater interference with the judicial process than false testimony and the willful failure to disclose information."); *see also Philips Electronics North America Corp. v. BC Technical*, 773 F.Supp.2d 1149, 1210 (D. Utah 2011) (noting that defendant interfered with judicial process when its employees, among other things, "gave false statements at depositions and/or within sworn declarations to [the] court").

In short, by making false statements, Defendants' conduct hindered the Court in its fact-finding function and its ability to do justice, warranting the sanctions requested by Purple.

## III.  THE HMR DEFENDANTS ARE CULPABLE FOR THEIR CONDUCT.

In a strange twist, The HMR Defendants argue that Monahan is not culpable for his false statements because Purple did not provide sufficient evidence to support a claim for perjury.  *See* Opp. at 6.  The crux of the HMR Defendants' argument is that there *may be* innocent explanations for the discrepancies that do not show an intent to mislead.  This argument has no merit.

The standard for sanctions for a party's false statements does not rest on the Court making a technical determination that the party had committed perjury.  Indeed, one of the primary considerations is simply whether a party's false statements can be classified as "oversight."  See *Whatcott*, (finding the offending party culpable where his conduct was not an oversight, but was "disdainful, dilatory, and non-compliant").  Where a party's false statements are not an oversight, then sanctions may be appropriate.

5

See *id.*; *see also* *Archibeque v. Atchison*, 70 F.3d 1172, 1175 (10th Cir. 2005) (affirming dismissal of party's complaint where the party's failure to disclose and false statements in discovery were not "mere oversight.").

In *Archibeque*, the Tenth Circuit affirmed the district court's finding that the offending party's conduct was not a mere "oversight" because the party never "explained her conduct." *See id.* at 1174. This case is similar, the HMR Defendants have failed to explain the "discrepancies" between Monahan's sworn testimony and the documentary evidence. Accordingly, Monahan's conduct cannot be classified as a mere oversight.

The HMR Defendants also argue that the December 2015 email between Monahan and Werner regarding Monahan's title of "Chief Brand Officer" "does not provide any context for the discussion" of the title. *See* Opp. at 7. However, notably absent from the HMR Defendants' Opposition is a declaration from Monahan that gives the Chief Brand Officer email context that is different from what the email appears to be. The only reasonable conclusion to draw from the email is that Monahan and Werner had agreed on Monahan's use of the title "Chief Brand Officer" in December of 2015. Also absent from this argument is any consideration of the numerous documents produced by GhostBed (and not the HMR Defendants) *after* the preliminary injunction hearing that show the extent to which Monahan used the title, including in frequent communications with Marc Werner.

The HMR Defendants failure to actually give an explanation for Monahan's false statements is a pattern that has repeated itself throughout this case. For example,

when confronted with Calisha Anderson's declaration, which was materially different than Monahan's declaration, the HMR defendants stated in court that Calisha Anderson's declaration was full of lies that the HMR Defendants would disprove.  *See* 8-2-17 Transcript (Dkt. 153) at 123-124 ("I realize if you look at Ms. Anderson's declaration, boy, that looks really compelling.  It is lies.  I am going to prove it is lies.  I hope that there will be sanctions when it shows that it is lies.  I hope she'll be charged with perjury when I can show she has lied.").  However, the HMR Defendants never provided any substantive evidence disproving Anderson's statements.  The HMR Defendants' Opposition follows this pattern of hollow defenses.

Additionally, the HMR Defendants now offer a gloss on Monahan's use of the title that is significantly different from what both Monahan originally declared.  Whereas Monahan previously declared that he used the title only to promote himself on LinkedIn and Twitter, *see* Dkt. 30 at 7, he now says that GhostBed authorized him to use the title in marketing emails for GhostBed, and that he was not authorized to use the title in any other context.  *See* Opp. at 7.  Again, the documents reveal that Monahan's use of the title was far more extensive than he stated in his declaration or at the preliminary injunction hearing.

In this case, Monahan signed his declaration under oath, the statements therein ranged from being outright false to deliberately misleading, and those statements cannot reasonably be viewed as "mere oversight," including because the HMR Defendants have failed to offer any reasonable explanation for the "discrepancies"

apparent between the documents and Monahan's sworn testimony.  See *Archibeque, 70 F.3d at 1174*.  Accordingly, sanctions against the HMR Defendants are warranted.

## IV.  PURPLE'S REQUESTED SANCTIONS ARE APPROPRIATE.

The HMR Defendants argue that because there may be exculpatory explanations for the false statements, then dispositive sanctions are inappropriate.  However, as previously noted, the HMR Defendants fail to offer any alternative evidence that supports their position that the false statements were merely an oversight or a mistake.  Indeed, there is no declaration from Monahan, and there are no additional documents.  Simply saying that there may be innocent explanations for the false statements do not make those statements true.  The only reasonable inference to draw when viewing Monahan's sworn testimony and the documents produced in discovery is that Monahan materially misled the Court and the parties concerning his association with GhostBed.  As a result, dispositive sanctions are appropriate.

## V.  LESSER SANCTIONS WOULD NOT BE EFFECTIVE.

The HMR Defendants argue that Purple's requested sanctions are too extreme because, as the HMR Defendants contend, Purple has not shown that Monahan's statements were made to intentionally mislead the Court.  Again, the HMR Defendants fail to offer any other explanation for Monahan's false statements.  Additionally, the HMR Defendants fail to provide any evidence in support of their contention that the statements were not deliberately misleading.  The only reasonable explanation for the serious discrepancies made by Monahan is that he was making false statements with the intent to mislead the Court and Plaintiff.  Striking the Monahan Defendants'

pleadings and entering judgment against them is a just and appropriate consequence of their improper conduct.

Even if the Court does not see fit to impose dispositive sanctions, it is clear that sanctions are warranted, including at a minimum an adverse jury instruction and monetary sanctions in the amount of Purple's reasonably-incurred attorney's fees and costs associated with Defendants' motions to dissolve the TRO, Purple's second preliminary injunction motion, and the instant motion.  Accordingly, as explained in the Motion for Sanctions, the sanctions requested by Purple are appropriate.

## CONCLUSION

For the foregoing reasons, Purple asks the Court to strike the HMR Defendants' pleadings and enter judgment against them.  In the alternative, Purple is entitled to an adverse jury instruction at trial.  In addition to the foregoing sanctions, the HMR Defendants should be required to pay Purple's reasonably-incurred attorney's fees and costs associated with Defendants' motions to dissolve the TRO, Purple's second preliminary injunction motion, and the instant motion.

DATED this 11th day of December, 2017.

MAGLEBY CATAXINOS & GREENWOOD

/s/ Adam Alba
James E. Magleby
Christine T. Greenwood
Adam Alba
*Attorneys for Plaintiff Purple Innovation, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I am employed by the law firm of MAGLEBY CATAXINOS & GREENWOOD, 170 South Main Street, Suite 1100, Salt Lake City, Utah 84101, and that, pursuant to Rule 5 of the Federal Rules of Civil Procedure, I served a true and correct copy of the foregoing **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS (RESPONSE TO HONEST REVIEWS AND RYAN MONAHAN'S OPPOSITION)** upon the following via CM/ECF System this 11th day of December, 2017:

Marc J. Randazza
  mjr@randazza.com
  ecf@randazza.com
Ronald D. Green
  rdg@randazza.com
RANDAZZA GROUP, LLM
4035 South El Capitan Way
Las Vegas, NV 89147

D. Gill Sperlein
  dgs@randazza.com
RANDAZZA GROUP, LLM
345 Grove Street
San Francisco, CA 94102

W. Andrew McCullough
  wandrew48@ymail.com
W. ANDREW MCCULLOUGH, LLC
6885 South State Street, Suite 200
Midvale, Utah 84047

*Attorneys for Defendants Honest Reviews, LLC
  and Ryan Monahan*

Ethan Horwitz
  ehorwitz@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
The Chrysler Building
405 Lexington Ave
New York, NY 10174-0002

Eleanor M. Yost
  eyost@carltonfields.com
  DLGhostBed-Utah@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson St. NW, Ste. 400 West
Washington, DC 20007-5208

Kathryn Tunacik Smith
  ksmith@strongandhanni.com
Karmen C. Schmid
  kschmid@strongandhanni.com
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, Utah 84111

Francis M. Wikstrom
  FWikstrom@parsonsbehle.com
Juliette P. White
  JWhite@parsonsbehle.com
Kennedy K. Luvai
  KLuvai@parsonsbehle.com
  ecf@parsonsbehle.com
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111

*Attorneys for Defendant GhostBed, Inc.*

_/s/ Janae Kidd_