James E. Magleby (7247)
 magleby@mcgiplaw.com
Christine T. Greenwood (8187)
 greenwood@mcgiplaw.com
Adam Alba (13128)
 alba@mcgiplaw.com
**MAGLEBY CATAXINOS & GREENWOOD, PC**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Purple Innovation, LLC

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **PURPLE INNOVATION, LLC, A Delaware limited liability company,**<br><br>        **Plaintiff,**<br>**v.**<br><br>**HONEST REVIEWS, LLC, a Florida Corporation, RYAN MONAHAN, an individual, GHOSTBED, INC., a Delaware corporation, MARC WERNER, an individual, ASHLEY WERNER, an individual, and SOCIAL MEDIA SHARKS, LLC, a Florida limited liability company,**<br><br>        **Defendants.** | **MOTION FOR SANCTIONS AND ORDER TO SHOW CAUSE WHY THE MONAHAN DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**<br><br><br><br><br><br><br><br><br><br>**Case No.:  2:17-cv-00138-DB**<br><br>**Honorable Dee Benson** |

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT ............................................................................................................ 10

I.    The Monahan Defendants Should Be Sanctioned For Their
Repeated False Statements. .................................................... 10

    1.    The Prejudice to Purple is Great ..................................... 15

    2.    The Monahan Defendants Have Interfered with The Judicial
Process ............................................................................ 16

    3.    The Monahan Defendants are Culpable ......................... 16

    4.    The Defendants Have Been Warned ............................. 17

    5.    Lesser Sanctions Will Not Be Effective ......................... 18

II.    The Monahan Defendants Have Violated The Preliminary Injunction
And Should Be Ordered To Show Cause Why They Should Not Be
Held In Contempt ...................................................................... 19

CONCLUSION ........................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brown v. Oil States Skagit Smatco*, 664 F.3d 71 (5th Cir. 2011) ............................ 13, 16

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ............................................................ 11

Chavez v. City of Albuquerque, 402 F.3d 1039 (10th Cir. 2010) ...................... 12, 13, 18

*ClearOne Comms., Inc. v. Chiang*, No. 2:07-cv-37, 2008 WL 704228 (Mar. 10, 2008). 19

*Dotson v. Bravo*, 202 F.R.D. 559 (E.D. Ill 2001) ....................................................... 13, 18

*Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992) ................................................. 13

*Forsberg v. Pefanis*, 634 Fed. Appx. 676 (11th Cir. 2015) ............................................ 13

*Garcia v. Berkshire Life Ins. Co.*, 569 F.3d 1174 (10th Cir. 2009) ................................. 12

*LaFleur v. Teen Help*, 342 F.3d 1145 (10th Cir. 2002) ............................................ 13, 14

*Lee v. Max Int'l, LLC*, 638 F.3d 1318 (10th Cir. 2011) .................................................... 11

*Radecki v. GlaxoSmithKline*, 375 Fed. Appx. 46 (2d. Cir. 2010) ................................... 13

*Webb v. Claimetrics Mgmt., LLC*, 412 Fed. Appx. 107 (10th Cir. 2011) ....................... 13

*Webb v. Texas*, 409 U.S. 95 (1972) ............................................................................... 18

*Whatcott v. City of Provo*, 231 F.R.D. 627 (D. Utah 2005) ...................................... 15, 17

*Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273 (D. Utah 2016) ............ 11, 12, 13, 14

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................ 15

Fed. R. Civ. P. 65(d)(2) ................................................................................................. 20

**Statutes**

28 U.S.C. § 1927 ........................................................................................................... 11

Plaintiff Purple Innovation, LLC ("Plaintiff" or "Purple"), by and through its counsel of record MAGLEBY CATAXINOS & GREENWOOD, respectfully moves the Court to impose additional sanctions against Defendants Honest Reviews, LLC ("Honest Reviews") and Ryan Monahan ("Monahan") (collectively, the "Monahan Defendants") and to order the Monahan Defendants to show cause why they should not be held in contempt of the Court's September 22, 2017 Preliminary Injunction Order (the "Preliminary Injunction"). [Doc. 191].

## INTRODUCTION

Despite – or perhaps because of – the Court's entry of the Preliminary Injunction in September 2017, which requires among other things the display on the www.honestmattressreviews.com website and social media channels (collectively, the "HMR Website") a disclosure as to Monahan's connection with Defendant GhostBed, Inc. ("GhostBed"), the Monahan Defendants continue to engage in underhanded and deceptive shenanigans in this case.  In particular, Monahan has again made a demonstratively false statement to Purple in a sworn declaration regarding his purported lack of any continued involvement in the "mattress review business," the clear intent of which is to circumvent the requirements of the Preliminary Injunction.  As set forth below, the evidence readily establishes that, in fact, Monahan is intimately involved in the "mattress review business," but he has sold the HMR Website and now conducts reviews on a new website, www.honestreview.com (the "New Website"), which is owned by a new company called Honest Showroom, LLC ("Honest Showroom").  Because the New Website is an "online location under the control of the Monahan Defendants,"

Preliminary Injunction at 12, ¶ 7 [Doc. 191], and because the Disclosure does not appear on the New Website, the Monahan Defendants are in contempt of the Preliminary Injunction.

Monahan's deception and efforts to evade the Court's order should not be tolerated. Instead, Monahan should again be sanctioned and should be ordered to show cause why he should not be held in contempt for violating the Preliminary Injunction.

## STATEMENT OF FACTS

### The Preliminary Injunction

1. On September 22, 2017, the Court entered the Preliminary Injunction against the Monahan Defendants and GhostBed. *See* Preliminary Injunction Order [Doc. 191]. Among other things, the Preliminary Injunction required the publication of a disclosure statement (the "Disclosure") at the top of the HMR Website and "*any other online location under the control of the Monahan Defendants*." *Id.* at 12, ¶ 7 (emphasis added).

2. The Preliminary Injunction expressly applies not just to the Monahan Defendants but also to "their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them." *Id.* at 10, ¶ 2.

### The HMR Defendants Sell the HMR Website

3. In mid-July 2018, Purple discovered that the Disclosure no longer appeared on the HMR Website or the HMR Facebook channel.

2

4.      Investigating further, Purple discovered that a new statement appeared at the bottom of the HMR Website's home page:



HMR Website homepage capture, attached as Exhibit 1.

5.      On the "About" page, Purple discovered that the HMR Website apparently has a new owner, Spartan Media Ventures, LLC, which is funded by a Purple competitor, Brooklyn Bedding (collectively, "Brooklyn"):

**Company Disclosure**
Honest Mattress Reviews is owned and operated by Spartan Media Ventures LLC., which is backed by Brooklyn Bedding. Brooklyn Bedding in no way has influence over any ratings or reviews on Honest Mattress Reviews.

HMR Website "About" page capture (emphasis added), attached as Exhibit 2.

6.      Upon discovering that the Disclosure had been removed from the HMR Website, Purple demanded that the Monahan Defendants put the disclaimer back on the HMR Website.  *See* July 10, 2018 Email A. Alba to D. Sperlein & M. Randazza, attached as Exhibit 3.

7.      In response, counsel for the Monahan Defendants stated, simply, that, "Our client no longer owns the website."  *See* July 10, 2018 Email M. Randazza to A. Alba, attached as Exhibit 4.  The Monahan Defendants did not supply any additional information.

8.      On July 12, 2018, Purple sent a letter to the Monahan Defendants instructing them to retain any documents related to the purported transfer of the HMR Website.  *See* July 12, 2018 Letter A. Alba to D. Sperlein, attached as Exhibit 5.

9.      In reply, counsel for the Monahan Defendants responded:  "You might want to read the order that *you* wrote – it actually *compels* us to *delete* the relevant information."  July 12, 2018 Email M. Randazza to S. Maart (emphases in original), attached as Exhibit 6.

10.     Additional communications between counsel ensued, with Purple requesting more information about the transfer of the HMR website to Brooklyn.

11.     On July 18, 2018, the Monahan Defendants provided to Purple, with a copy to counsel for Defendants GhostBed, Inc., Marc Werner, and Ashley Werner (collectively, the "GhostBed Defendants"), a declaration signed by Monahan under penalty of perjury and a copy of an agreement by which the Monahan Defendants purport to have sold the HMR Website, along with other, related "intellectual property," to Brooklyn.  *See* July 18, 2018 Declaration of Ryan Monahan, attached as Exhibit 7.

12.     The final sentence of Monahan's Declaration states as follows:

> 12.    I remain the sole owner of Honest Reviews, LLCs, which operates review sites for other products, but I am no longer in the mattress review business.

Monahan Decl. at ¶ 12, Ex. 7.

### The New Website and Company

13.     Despite Monahan's unequivocal statement in his declaration that he is "no longer involved in the mattress review business," it appears he is intimately involved in a

new website that features most prominently mattress reviews.  It further appears that, in order to conceal his involvement with the new website, he formed a new entity and changed the name of a previous website owned and operated by the Monahan Defendants, www.honestreviews.com (the "HR Website"), which is now inactive, to www.honestreview.com (the "New Website") – without the "s" following the word "review."  *See* Capture of New Website homepage, attached as Exhibit 8.  Moreover, unlike the HR Website, which was devoted to consumer products other than mattress, the New Website focuses on both mattresses *and* other products.  *See id.*

14.     According to the "Disclaimer" page of the New Website, it is owned not by Honest Reviews – the defendant in this case – but instead by a new entity, Honest Showroom, LLC ("Honest Showroom")

> These Honest Review's Terms and Conditions apply to the website (the "Site") which is owned and published by Honest Showroom LLC (collectively referred to as "we", "our" or "us"). The use of the Site is subject to the following terms and conditions (the "Terms"). Please read these Terms carefully. By using this Site, you agree to these Terms as well as any other terms, guidelines or rules that apply to any portion of this Site, without limitation or qualification. If you do not agree to these Terms, then you must exit the Site immediately and discontinue any use of the information accessible through the Site. We reserve the right to modify the Agreement from time to time without prior notice to you. You can know if these Terms and the other components of the Agreement have been changed by referring to the date at the top of each posted document. It is your exclusive obligation to review the Agreement carefully. Please do so. If you do not agree to be bound by all provisions, do not purchase any products from the Website and please exit the Website promptly. Your continued use of this Website after such changes will constitute acknowledgment and acceptance of the modified Agreement. If you have any questions about the Terms, please contact us at hello@honestreview.com

*See* Capture of New site "Disclaimer" page (emphasis added), attached as Exhibit 9.

15.     Monahan does not appear as an owner or manager for the new entity, Honest Showroom.  *See* Business Entity Search Results for Honest Showroom, attached as Exhibit 10.  However, the managers that are listed for the new entity are closely affiliated with Monahan.  They are Yarina Monahan, Monahan's wife, and

Guillaume Bertoldi and Greg Fuller – Monahan's partners in Defendant Social Media Sharks, LLC ("Social Media Sharks"):



*Id.*

16.     The address for Honest Showroom – 3601 N. Dixie Highway, Suite 7, Boca Raton, Florida – is the same address as the address for Honest Reviews:



*See* Business Entity Search Results for Honest Reviews, attached as Exhibit 11.

17.     In addition to the New Website, Honest Showroom owns and operates a separate website with the URL address www.honestshowroom.com (the "Showroom Website").  *See* Capture of homepage for the Showroom Website, attached as Exhibit 12.  On that website, Honest Showroom is identified as a business where consumers can try out mattresses and other products at a brick and mortar location.  *See id.*

18.     In a further effort to obscure his involvement with the New Website and Honest Showroom, a disclosure on the Showroom Site disavows Monahan's involvement with the new company:

> It's important to note that although we respect the mission that Mr. Ryan Monahan, the owner and operator of Honest Mattress Reviews (HMR) (https://www.honestmattressreviews.com) has defined, we are a separate business entity and governed by different revenue models.  Mr. Monahan is not an owner of Honest Showroom.

*See* Capture of Showroom Website's "Disclaimer" page (emphases added), attached as Exhibit 13.

19.     Whether or not Monahan is technically an owner of Honest Showroom, the fact that the entity is owned by his wife and his partners in Social Media Sharks shows that he is intimately involved in the business, the New Website, and the Showroom Website, i.e., "the mattress review business."

20.     Even more troublingly, Monahan's statements to the owner of a separate mattress company, Perfect Pressure, LLC, which sells mattresses and related products under the name Morphiis, unequivocally shows Monahan's involvement.  In a number of email communications provided to Purple by Earl Takefman, Monahan explains that "we" are migrating our mattress reviews from the HMR Website to the New Website, and Monahan responds using the email address hello@honestreview.com:

**From:** Honest Review <hello@honestreview.com>
**Sent:** May 10, 2018 9:48 AM
**To:** Earl Takefman <EarlT@personalizedsleepsolutions.com>
**Subject:** HONEST REVIEW | MATTRESS REVIEW

Hi Earl,

We would love to review your mattress.  I'm originally from the Chicago land area so it's great to see some home town mattress makers!

We are migrating our review process to our new premium domain, honestreview.com.

Here is the format of the reviews now - https://www.honestreview.com/layla-sleep-mattress-review/

We do not have any cost for a review and they are completed with 20 - 30 days after receiving the product.

Our address is 3601 N Dixie Hwy Ste 7, Boca Raton, FL 33431

We're happy to answer any questions you have at all!


Ryan Monahan

May 10, 2018 Email R. Monahan to E. Takefman (emphases added), attached as Exhibit 14.

21.     In a subsequent email, in response to an inquiry from Mr. Takefman as to when the review of his mattress will be completed, Monahan responds, on behalf of Honest Review, as follows:

8

**From:** Honest Review <hello@honestreview.com>
**Sent:** June 5, 2018 10:11 AM
**To:** Earl Takefman <Earlt@mymorphiis.com>
**Subject:** Re: Can someone please get back to me?? I have ...

Hey there Earl,

We were closed for renovations.  We're about 4 weeks from opening the showroom!

Your review is complete and we will publish live within a day!

Ryan

On Tue, Jun 5, 2018 at 9:05 AM, Earl Takefman <Earlt@mymorphiis.com> wrote:

> ... sent e-mails, called the showroom and filled out the form on your website, with no response. Are you in business?

June 5, 2018 Email R. Monahan to E. Takefman (emphases added), attached as Exhibit 15

      22.     Monahan's signature block for the June 5 email is as follows:

Ryan Monahan
Editorial Team
**Honest Review**

*Id.* (emphasis added).

      23.     In response to a subsequent email about the status of the promised review of the Morphis mattress, Monahan explains that "our" showroom is newly complete, and that he had to complete the sale of the HMR Website prior to fully launching the New Website, which Monahan explains *encompasses all mattress reviews*:

**From:** Honest Review <hello@honestreview.com>
**Sent:** June 20, 2018 6:47 PM
**To:** earl takefman <etakefman@hotmail.com>
**Subject:** Re: Not going to beg anymore. Please call me. If not good luck.

Hey Earl,

We're finalizing our showroom now.  We also had to complete the sale of the IP of Honest Mattress Reviews for our larger project HonestReview.com (which encompasses all mattress reviews).  We did not have access to the email until the deal.

June 20, 2018 Email R. Monahan to E. Takefman, attached as Exhibit 16.

24.     Whether or not Monahan is technically an owner of Honest Showroom, the fact that the entity is owned by his wife and his partners in Social Media Sharks shows that he is intimately involved in the business, the New Website, and the Showroom Website, i.e., "the mattress review business."

25.     The New Website also links to another sited called "Honest Coupons."

26.     Like the New Website, the Honest Coupons site disavows any relationship with Monahan.

> **important note**
>
> Honest Coupons is not owned by Honest Mattress Reviews and is a separate business entirely.  Though we have a great relationship with Mr. Monahan he is not an owner.

*See* Capture of Honest Coupons Website, attached as Exhibit 17.

## ARGUMENT

## I.      THE MONAHAN DEFENDANTS SHOULD BE SANCTIONED FOR THEIR REPEATED FALSE STATEMENTS.

Sanctions are warranted in this case because the Monahan Defendants have again propagated a falsehood in a sworn statement, this time not in an effort to avoid

the entry of injunctive relief, but instead in an effort to skirt the injunctive relief already granted by the Court.

The law affords federal district courts "very broad discretion to exercise their inherent powers to sanction a full range of litigation misconduct that abuses the judicial process." *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1300–01 (D. Utah 2016) (dismissing shareholder's counterclaims and excluding improperly-obtained evidence as sanctions for litigation misconduct, including obtaining privileged and confidential documents through back-channel sources, but declining to enter default judgment against shareholder on plaintiff's claims). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("Courts of justice are universally acknowledged to be vested, by their creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."); *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011) ("We have said that district courts enjoy 'very broad discretion to use sanctions where necessary to insure that lawyers and parties fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.'" (citation omitted)). As explained in *Xyngular*, "[t]hese inherent powers are not governed by any rule or statute. They are instead 'necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* at 1301 (quoting *Chambers*, 501 U.S. at 43).[1]

---

[1] "Federal courts may sanction misconduct under their inherent powers even if the same conduct is sanctionable under one of the federal rules." *Xyngular*, 200 F. Supp. 3d at 1303 (applying Rule11 standard even though parties sought sanctions under the court's inherent powers); *see also Chambers*, 501 U.S. at 42-43 (holding that neither 28 U.S.C.

The sanctions a court may impose include dismissal of a party's case, *see Xyngular*, 200 F. Supp. 3d at 1301; the imposition of default against a party on claims asserted against it, *id.* at 1311, 1325; vacating a judgment previously entered in a party's favor, *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005); monetary fines or sanctions, *Xyngular*, 200 F. Supp. 3d at 1324; exclusion of evidence, *id.* at 1325; attorney disqualification, *id.* at 1326; and attorney's fees and costs, including, for example, the fees and costs incurred in connection with pursuing sanctions. *Id.* at 1326.

As set forth above, the Monahan Defendants have again made a material misrepresentation in a sworn statement,[2] in this instance deliberately designed to deceive Purple and the Court into believing they are complying with the Preliminary Injunction.

There is no question that the Monahan Defendants' false sworn statements are sanctionable. Moreover, given the materiality of the statements and the fact that this is not the first time the Monahan Defendants have falsified the facts, grave sanctions – including the entry of a default judgment against them – are warranted. *See, e.g., Garcia v. Berkshire Life Ins. Co.*, 569 F.3d 1174, 1182 (10th Cir. 2009) (affirming sanction of dismissal for plaintiff's submission of inauthentic documents); *Chavez*, 402

---

§ 1927 nor the Federal Rules of Civil Procedure displaces the federal courts' inherent powers to impose sanctions on litigants and attorneys).

[2] The Court's prior award of sanctions against the Monahan Defendants was based on statements in a sworn declaration and testimony at the preliminary injunction hearing.

F.3d at 1046 (affirming district court's dismissal of the plaintiff's case "as a sanction for perjuring himself during discovery"); *see also Forsberg v. Pefanis*, 634 Fed. Appx. 676, 679 (11th Cir. 2015) (affirming trial court's sanction of striking the defendant's answer for submitting a false affidavit from a co-worker); *Webb v. Claimetrics Mgmt., LLC*, 412 Fed. Appx. 107, 108 (10th Cir. 2011) (affirming dismissal sanction for misrepresentations regarding diversity jurisdiction); *Radecki v. GlaxoSmithKline*, 375 Fed. Appx. 46, 47-48 (2d. Cir. 2010) (affirming dismissal of plaintiff's FMLA case after mistrial where plaintiff perjured himself to the jury); *Dotson v. Bravo*, 202 F.R.D. 559, 570 (E.D. Ill. 2001) (dismissing plaintiff's complaint where he used false name in deposition and answers to interrogatories). Swearing to tell the truth and then failing to do so "is not trivial. The proper administration of justice depends on people testifying truthfully under oath." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (affirming sanction of dismissal for perjured deposition testimony).

The Tenth Circuit has articulated five factors that may inform the district court's determination of what sanctions are appropriate:

> (1) the degree of actual prejudice to the [opposing party], (2) the degree of interference with the judicial process, (3) the litigant's culpability, (4) whether the litigant was warned in advance that dismissal was a likely sanction, and (5) whether lesser sanctions would be effective.

*LaFleur v. Teen Help*, 342 F.3d 1145, 1151 (10th Cir. 2002) (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)) (affirming dismissal of plaintiff's complaint for failure to appear at deposition and related discovery misconduct); *see also Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044-45 (10th Cir. 2005) (applying *Ehrenhaus* factors); *Xyngular*, 200 F. Supp. 3d at 1302 & 1319 (same).

The *Ehrenraus* factors are not to be applied rigidly, but instead they provide a "flexible framework." *LaFleur*, 342 F.3d at 1151. Dismissal is appropriate when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits." *Xyngular*, 200 F. Supp. 3d at 1302, 1319 (citations omitted). Nevertheless, in determining what sanction is appropriate, courts bear in mind that the sanction "should adequately punish [the party's] misconduct, remedy the prejudice to and harm suffered by the [opposing party], deter future litigants from engaging in [the] type of misconduct [at issue], and engender trust in the integrity of the judicial proceedings." *Xyngular*, 200 F. Supp. 3d at 1319-20.

In similar circumstances, Courts have imposed severe contempt sanctions. *See, e.g., Select Creations, Inc. v. Paliafito America, Inc.*, 906 F. Supp. 1251, 1278, 1279 (E.D. Wis. 1995) (imposing civil fine of $370,540, plus costs and attorney fees, for contempt, based on the "totality of the evidentiary record," together with defendant's "demeanor," "repeated impeachments on prior inconsistent statements (many of them sworn)," "her evasive manner of testifying," and the "absurdity of some of her 'explanations'"); *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 67 (D.D.C. 2003) (""Where a party's 'entire course of conduct throughout the lawsuit evidence[s] bad faith and an attempt to perpetrate a fraud on the court,' the conduct is sanctionable under the inherent power of the court.").

The balance of the *Ehrenhaus* factors in this case strongly favors not only an award of the fees incurred by Purple in connection with this motion, but also striking the Monahan Defendants' answers and defenses to Purple's complaint and entering

14

judgment against them.  In the alternative to judgment, the Court should consider delivering an adverse jury instruction at trial.

### 1.    The Prejudice to Purple is Great

As to the first factor, Monahan's false statements and underhanded conduct have again substantially prejudiced Purple.  Specifically, by selling the HMR Website and falsely informing Purple they were no longer involved in the business of mattress reviews, the Monahan Defendants led Purple to believe they were no longer targeting Purple and were not violating the Preliminary Injunction.  Had Monahan been forthright and truthful about his activities, Purple would not have had to spend the time and money needed to investigate the facts showing the violation, resulting in "unreasonable delay and mounting attorney's fees."  *Whatcott v. City of Provo*, 231 F.R.D. 627, 630 (D. Utah 2005) (finding that the first factor weighed in favor of sanctions because the offending party's conduct caused delay).  If the Monahan Defendants had informed Purple that they had sold the HMR Website and "migrated" their own mattress review business to a new website, on which they would post the information required by the Court's Preliminary Injunction, and if they had not evasively sought to mislead Purple, the Court, and the Public as to Monahan's involvement with the New Website, Purple would not have been forced to seek the truth on its own, and it would not have been required to come to the Court to enforce the Preliminary Injunction against the Monahan Defendants.

Under these circumstances, the first factor weighs heavily in favor of imposing serious sanctions against the Monahan Defendants.

15

2.    <u>The Monahan Defendants Have Interfered with The Judicial Process</u>

The second *Ehrenhaus* factor also supports these sanctions.  A primary purpose of the litigation process and the Rules of Civil Procedure is to ferret out the truth in the most efficient manner possible. *See* Fed. R. Civ. P. 1 ("They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *Brown*, 664 F.3d at 77 ("The proper administration of justice depends on people testifying truthfully under oath").  Monahan's falsehoods have seriously interfered with the judicial process, not only by allowing him to evade the requirements of the Preliminary Injunction but also by causing the need for additional discovery and motion practice.

In short, the Monahan Defendants' conduct has hindered Purple in its efforts to pursue its case to stop irreparable harm, and it has undermined the purpose of the relief granted by the Court in the Preliminary Injunction.  The Monahan Defendants' conduct also demonstrates a lack of respect for the process, in that the prior sanctions order seems not to have deterred them from repeating the same type of behavior – a serious demonstration of a lack of respect for the judicial system.  Accordingly, this factor also weighs strongly in favor of the imposition of severe sanctions.

The Monahan Defendants in this case are culpable for their serious, deliberate, and knowing misconduct, and sanctions against them are well warranted.

3.    <u>The Monahan Defendants are Culpable</u>

The third factor likewise weighs in favor of dismissal, because the Monahan Defendants are culpable for their actions.  Indeed, the Court has already sanctioned the

16

Monahan Defendants for their dishonest and evasive testimony.  Despite that order, the Monahan Defendants have not taken heed of the Court's admonition, but instead they have flouted the Court's authority again, both by engaging in underhanded machinations to dodge the terms of the Preliminary Injunctions and by including a falsehood in a sworn statement provided to Purple.  As in *Whatcott*, where this Court dismissed the plaintiff's case due to his failure to comply with discovery and court orders, Monahan's conduct and false statements cannot "be reasonably classified as mere oversight."  *Whatcott*, 231 F.R.D. at 631 (finding the offending party culpable where his conduct was not in good faith but "disdainful, dilatory, and non-compliant").  Rather, the conduct here was willful, in bad faith, and calculated to hide the facts as to the Monahan Defendants' scheme to circumvent the Preliminary Injunction.

4.     The Defendants Have Been Warned

The fourth factor assesses whether the court has issued a warning that sanctions may ensue.  Here, the Court's earlier sanctions order, particularly when combined with the Preliminary Injunction, constitutes a clear and certain warning to the Monahan Defendants.  The sanction order effectively put the Monahan Defendants on notice that the Court would not tolerate dishonesty or gamesmanship.  As noted, the Monahan Defendants were aware of this warning and yet chose to ignore it.  Therefore, this element likewise weighs in favor of sanctioning the Monahan Defendants.

Finally, even if the Monahan Defendants had not been forewarned – which they have – the law is clear that, in cases involving misrepresentations or perjury there is no need for a warning in any case.  "Once a witness swears to give truthful answers, there

is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth.  It would render the sanctity of the oath quite meaningless to require admonition to adhere to it."  *Chavez*, 402 F.3d at 1045 (quoting *Webb v. Texas*, 409 U.S. 95, 97 n.* (1972)).  As in *Chavez,* where "the perjurious testimony was given under oath, an additional warning would have been superfluous at best."  *Id.*  Here, while Monahan did not sign the declaration at issue before a notary public, he signed the declaration "under the penalty of perjury" in accordance with 28 U.S.C. § 1746, and sanctions against him are more than sufficiently justified.  "Toleration of perjury is unseemly—it undermines and dishonors the legal system, and undermines and dishonors the courts, themselves."  *Dotson*, 202 F.R.D. at 570.

### 5.   Lesser Sanctions Will Not Be Effective

The fifth factor also weighs in favor of serious sanctions. The Monahan Defendants have already been sanctioned in the form of being ordered to pay a substantial amount of attorneys' fees, which they have made no effort to pay despite selling the HMR website and related social media assets to a third party knowing of this Court's order on sanctions, yet they have taken part in the exact type of behavior for which they previously sanctioned.  Thus, it appears that monetary sanctions have been and will be insufficient to deter future misconduct and ensure compliance with the Preliminary Injunction and honesty in communications on which it intends Purple, the Court, and the Public to rely.  As a result, lesser sanctions will be insufficient to punish the Monahan Defendants in this instance.

In summary, striking the Monahan Defendants' answers and entering judgment against them, along with an order granting the fees incurred in connection with this motion, are the most appropriate sanctions for the their most recent misconduct.  *See, e.g., ClearOne Comms., Inc. v. Chiang*, No. 2:07-cv-37, 2008 WL 704228, *6 (Mar. 10, 2008) (requiring defendant to pay costs and fees flowing from his misrepresentations).

In the alternative to striking the Monahan Defendants' answers and defenses and entering judgment against them, an adverse jury instruction should be delivered at trial.  *See Id.* at *5; *see also* 5-15-08 Order, Doc. 860 in *ClearOne v. Chiang*, No. 2:07-cv-37 (adopting magistrate judge's recommendation as to adverse jury instruction), attached as Exhibit 18.

## II. THE MONAHAN DEFENDANTS HAVE VIOLATED THE PRELIMINARY INJUNCITON AND SHOULD BE ORDERED TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT

To establish contempt, Purple need only show (1) that a valid court order existed; (2) that the Defendants had knowledge of the order; and (3) that the Defendants disobeyed the order.  *See Bad Ass Coffee Company of Haw., Inc. v. Bad Ass Coffee Ltd. P'ship*, 95 F. Supp. 2d 1252, 1255 (10th Cir. 2000).  Consistent with their prior efforts to deceive Purple, the Court, and the public as to the connections between Monahan and GhostBed, the Monahan Defendants now seek to hide their continued involvement in the mattress review business by obfuscating their involvement with the New Website, thereby gaining a free pass from compliance with the Preliminary Injunction.  Because the Monahan Defendants control the New Website, the New Website is subject to the requirements of the Preliminary Injunction, including the

prominent display of the Disclosure. As such, the Monahan Defendants should be made to show cause why they should not be held in contempt.

First, there is no doubt that the Preliminary Injunction remains outstanding and is a valid and binding order of the Court with which the Monahan Defendants must comply. Second, there is no question that the Monahan Defendants are aware of the order. Indeed, prior to selling the HMR Website, the Monahan Defendants took steps to try to comply with the Preliminary Injunction.

Third, the Monahan Defendants are in violation of the plain language of the Preliminary Injunction. As noted above, the New Website does not contain or display the Disclosure, despite the clear requirement in the Preliminary Injunction that the Disclosure appear at the top of the HMR Website and "*any other online location under the control of the Monahan Defendants*." [Doc. 191 at 12, ¶ 7 (emphasis added)]. The facts set forth above – including Monahan's direct and intimate relationship with the owners of the New Website and his communications with a third-party mattress company soliciting business for the New Website and in which he refers to those controlling the New Website as "we" – are more than sufficient to conclude that the New Website is controlled by Monahan. As such, the New Website must comply with the Preliminary Injunction, and it does not.

Moreover, the Preliminary Injunction expressly applies not just to the Monahan Defendants but also to "their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them." *Id.* at 10, ¶ 2. This is consistent with the language of Rule 65(d)(2), which similarly provides that such

preliminary injunctions are binding the parties, their agents, and anyone acting in concert with them.   Fed. R. Civ. P. 65(d)(2).   Monahan's wife and his partners in Social Media Sharks can hardly be called independent from Monahan; instead, the evidence is that those individuals are standing in as the "technical" owners of the New Website, the new entity, Honest Showroom, and the Showroom Website, but Monahan remains in charge.   Accordingly, the New Website must comply with the terms of the Preliminary Injunction, including the terms requiring the display of the Disclosure.

The Monahan Defendants are in violation of the Preliminary Injunction, and they should be ordered to show cause why they should not be held in contempt.

## CONCLUSION

Purple respectfully asks the Court to sanction the Monahan Defendants for their continued failure to be truthful in this matter, including by entering judgment in this action in favor of Purple and against the Monahan Defendants or, alternatively, delivering an adverse jury instruction at trial, and also by requiring them to pay Purple's reasonably-incurred attorneys' fees and costs associated with this motion.   In addition, Purple asks the Court to issue an order to show cause why the Monahan Defendants should not be held in contempt for their failure to comply with the Preliminary Injunction.

DATED this 8th day of August, 2018.

MAGLEBY CATAXINOS & GREENWOOD, PC

James E. Magleby
Christine T. Greenwood
Adam Alba
*Attorneys for Plaintiff Purple Innovation, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I am employed by the law firm of MAGLEBY CATAXINOS &

GREENWOOD, PC,  170 South Main Street, Suite 1100, Salt Lake City, Utah 84101, and

that, pursuant to Rule 5 of the Federal Rules of Civil Procedure, I served a true and

correct copy of the foregoing **MOTION FOR SANCTIONS AND ORDER TO SHOW**

**CAUSE WHY THE MONAHAN DEFENDANTS SHOULD NOT BE HELD IN**

**CONTEMPT** upon the following via ECF and/or electronic mail this 7th day of August,

2018:

Ethan Horwitz
 ehorwitz@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0002

Angela T. Puentes-Leon
 apuentes-leon@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower
100 S.E. Second Street, STE 4200
Miami, FL  33131-2113

Kathryn Tunacik Smith
 ksmith@strongandhanni.com
Karmen C. Schmid
 kschmid@strongandhanni.com
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, UT 84111

Francis M. Wikstrom
 FWikstrom@parsonsbehle.com
Juliette P. White
 JWhite@parsonsbehle.com
Kennedy K. Luvai
 KLuvai@parsonsbehle.com
 ecf@parsonsbehle.com
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111

*Attorneys for Defendant GhostBed, Inc.*

Marc J. Randazza
 mjr@randazza.com
 ecf@randazza.com
Ronald D. Green
 rdg@randazza.com
RANDAZZA GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

D. Gill Sperlein
 dgs@randazza.com
RANDAZZA GROUP, LLM
345 Grove Street
San Francisco, CA 94102

W. Andrew McCullough
 wandrew48@ymail.com
W. ANDREW MCCULLOUGH, LLC
6885 South State Street, Suite 200
Midvale, UT 84047

*Attorneys for Defendants Honest Reviews, LLC
and Ryan Monahan*