Marc J. Randazza (*pro hac vice*)
Ronald D. Green (*pro hac vice*)
D. Gill Sperlein (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: (702) 420-2001
ecf@randazza.com

W. Andrew McCullough (2170)
6885 S State Street, Suite 200
Midvale, Utah 84047
Telephone: (801) 565-0894
Facsimile:  (801) 565-1099
wandrew48@ymail.com

Attorneys for Honest Reviews, LLC
and Ryan Monahan

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PURPLE INNOVATIONS, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> HONEST REVIEWS, LLC, a Florida Corporation, RYAN MONAHAN, an individual, and GHOSTBED, INC., a Delaware corporation, <br><br> Defendants. | **OPPOSITION TO MOTION FOR SANCTIONS AND ORDER TO SHOW CAUSE WHY THE MONAHAN DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT** <br><br><br> Case No.: 2:17-cv-00138-DB <br><br> Honorable Dee Benson |

Defendants Honest Reviews, LLC ("HMR") and Ryan Monahan (collectively, "HMR Defendants") hereby file their Opposition to Plaintiff Purple Innovations, LLC's ("Purple") Motion for Sanctions and Order to Show Cause Why the Monahan Defendants Should Not be Held in Contempt (Dkt. No. 351).  This Opposition is based upon the attached Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any oral argument permitted by this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff is attempting to impose sanctions on HMR Defendants for conduct that does not violate the Court's Preliminary Injunction (Dkt. No. 191).  Honest Reviews, LLC, sold the <honestmattressreviews.com> web site (the "Honest Site") to Brooklyn Bedding; indeed, Plaintiff planted the idea of selling the website in Mr. Monahan's mind.  (*See* Dkt. No. 351-7 at ¶ 3.)  This sale included the <honestmattressreviews.com> domain name (and several other domain names), the Honest Mattress Reviews email account and WordPress assets, and Honest Mattress Reviews social media channels.  (*See id*. at 6.)  The Preliminary Injunction did not prevent Mr. Monahan from doing any of this.  Neither does the Preliminary Injunction prevent or impede Mr. Monahan from working for a new company, Honest Showroom, LLC, which owns and publishes the review web site <honestreview.com>; Mr. Monahan is not a manager of Honest Showroom.  (*See* Dkt. No. 351-10.)

As a result of the sale of the Honest Site, HMR Defendants no longer hold control over the contents of that site.  Plaintiff does not contend that the sale of the site, or the lack of a disclosure statement on the current Honest Site, constitutes a violation of the Preliminary Injunction.  Instead, Plaintiff claims that HMR Defendants violated the Preliminary Injunction because (1) Mr. Monahan allegedly made a false sworn statement that he was "no longer in the mattress review business" (Dkt. No. 351-7 at ¶ 12); and (2) he is involved with one or more other web sites

involving mattresses that do not contain the required disclosure statement.  Neither of these claims are plausible.

The first claim is not a violation of the Preliminary Injunction in any way; even if the statement were false, the injunction does not generally bar Mr. Monahan from making false statements.[1]  And the second claim represents a misreading of the Preliminary Injunction. Regarding web sites other than the HMR Site, the injunction only requires a disclosure statement on pages operated by HMR Defendants that reference Purple; it does not apply to mattress review web sites generally.

Even if HMR Defendants did violate the Preliminary Injunction in some way, Plaintiff cannot establish that any of the *Ehrenhaus* factors favor imposition of sanctions anywhere near as severe as Plaintiff requests.  The Court should deny Plaintiff's motion.

## 2.0   LEGAL STANDARDS

Plaintiff requests that the Court enter judgment against HMR Defendants or deliver an adverse jury instruction, as well as require them to pay Plaintiff's fees and costs associated with their motion.  The Tenth Circuit has articulated a five-factor test in determining the propriety of sanctions in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992): (1) the degree of actual prejudice to the defendant; (2) the degree of interference with the judicial process; (3) the litigant's culpability; (4) whether the litigant was warned in advance that a dispositive determination was a likely sanction; and (5) whether lesser sanctions would be more effective.   "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits is dismissal an appropriate sanction."  *Meade v. Grubbs*, 841 F.2d 1512, 1521 n.7 (10th Cir. 1988).

---

[1]   As explained below, Plaintiff has not provided any evidence that Mr. Monahan made this statement with knowledge of its falsity.

*Ehrenhaus* dealt with a plaintiff being sanctioned with dismissal[2] of its claims for intentional violation of a discovery order.  The court recognized that "dismissal represents an extreme sanction appropriate only in cases of willful misconduct," and that "[b]ecause dismissal with prejudice 'defeats altogether a litigant's right to access to the courts, it should be used as 'a weapon of last, rather than first, resort.'"  *Ehrenhaus*, 965 F.2d at 920 (quoting *Grubbs*, 841 F.2d at 1520).  Dismissal is only appropriate where bad faith or willfulness is established by clear and convincing evidence.  *See Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1301 (D. Utah 2016).

## 3.0   ARGUMENT

### 3.1   Plaintiff Has Not Shown HMR Defendants Violated the Preliminary Injunction

Plaintiff's argument primarily rests on a misreading of the Preliminary Injunction.  The injunction requires a website-wide disclosure by HMR Defendants only on the Honest Site "and all associated social media platforms, including without limitation the HMR Facebook page, YouTube Channel, and Twitter page."  (Dkt. No. 191 at 10-11, ¶ 2.)  The statement must be displayed "at the top of the HMR website's home page and every other page of the HMR website.  The Disclosure statement must also appear clearly and conspicuously at the top of each HMR Social Media platform."  (*Id*. at 11, ¶ 3.)  HMR Defendants sold the Honest Site and its social media platforms to Brooklyn Bedding.  If the Disclosure statement no longer appears, such is not attributable to HMR Defendants, and Plaintiff does not assert, nor can it, that this sale, or the lack of the disclosure statement on the current version of the Honest Site and social media, free of ownership and control by HMR Defendants, constitutes a violation of the Preliminary Injunction.

---

[2]   Plaintiff seeks default against HMR Defendants.  The consequences of entering default against a litigant as a sanction are even greater than dismissing a litigant's claims, as there may be constitutional due process concerns with such a sanction.  *See Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197 (1958) (noting that provision of Fed. R. Civ. P. 37 allowing entry of default as a discovery sanction "must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law").

Instead, Plaintiff contends that the lack of a disclosure statement on the <honestreview.com> web site (the "Showroom Site") constitutes a violation of the injunction, citing paragraph 7 of the injunction. However, paragraph 7 states that HMR Defendants must display the disclosure statement "on each **page or video referencing Purple** on … any other online location under the control of the Monahan Defendants." (Dkt. No. 191 at 12, ¶ 7) (emphasis added). This means that, for web sites other than the Honest Site or HMR's social media platforms, a disclosure statement is only required on web pages or videos that (1) **reference Purple**; and (2) are under the control of the HMR Defendants. A general disclosure on each page of any site in which Mr. Monahan might happen to have some relationship with is not required.

This is an important distinction. Plaintiff does not allege that the Showroom Site references Plaintiff, by review of Plaintiff's products or otherwise. None of the evidence provided in the motion shows this either. Plaintiff also makes reference to the <honestshowroom.com> and <honestcoupon.com> web sites as evidence of HMR Defendants violating the injunction, but again there is no allegation or evidence that either of these web sites refers to Plaintiff or its products, or even provides mattress reviews at all. Even if there were pages referencing Purple on one or more of these sites, the plain language of the injunction would only require a disclosure statement on these specific pages, and not on every page of the web site.[3] And even if such pages existed, Plaintiff has provided no evidence to suggest Mr. Monahan personally authored, published, or was even aware of them, *i.e.*, they are not under his control. Plaintiff has thus failed to demonstrate a violation of the Preliminary Injunction, and the Court should deny its motion.

The remainder of Plaintiff's argument rests on the premise that Mr. Monahan made a misrepresentation, under oath, to Plaintiff regarding his involvement in the "mattress review

---

[3] These arguments apply equally to HMR and Mr. Monahan. But Plaintiff's motion is especially weak as to HMR; there is no specific allegation that HMR was involved in any potential violation of the Preliminary Injunction. In fact, based on the evidence provided in the motion, this would seem impossible, as an entirely separate entity controls the <honestreview.com>, <honestshowroom.com>, and <honestcoupon.com> web sites.

business." But this is not a violation of the preliminary injunction. A statement in his declaration not filed with this Court does not violate any order of the Court. All of the cases cited by Plaintiff addressed litigation misconduct; though the declaration contains the caption of this matter, the declaration was not filed by HMR Defendants in this matter and was not created with the intent it might be filed in this Court. Nor is there evidence it is inaccurate; the correspondence with Mr. Takefman does not indicate Mr. Monahan was himself reviewing a mattress or publishing the mattress review. Mr. Monahan has not been shown to have written or published any mattress reviews for Honest Showroom, LLC. Instead, the correspondence speaks of the new entity doing so. Moreover, the declaration is dated July 10, 2018; to the extent Mr. Monahan may be deemed to have been in the business, by coordinating with Mr. Takefman, the review was completed by June 5, 2018. Absent any other reviews, this would mean his involvement in the mattress review business had terminated by that date, over a month prior to the execution of the declaration. Additionally, it must be noted that the declaration was signed by Mr. Monahan personally, and was not signed on behalf of HMR, and HMR is not alleged to have continued in the mattress review business. (*See* Dkt. No. 351-7.)

### 3.2   Plaintiff Suffered No Actual Prejudice

Because HMR Defendants did not violate the Preliminary Injunction, Plaintiff has not suffered any prejudice. Plaintiff claims this harm was caused by deception on the part of Mr. Monahan in telling Plaintiff he was no longer in the mattress review business after selling the Honest Site and social media assets which "led Purple to believe they were no longer targeting Purple and were not violating the Preliminary Injunction." (Dkt. No. 351 at 18.) But Plaintiff is making unsubstantiated arguments here; there is no evidence to suggest that HMR Defendants are "targeting Purple." The evidence supporting Plaintiff's motion only show that Mr. Monahan has some involvement in a web site called <honestreview.com>. There is no evidence of negative review pages "targeting" Purple, and no evidence of any web pages containing information that

the Court found to be false or deceptive, which formed the entire basis of the Preliminary Injunction. There is thus no conceivable prejudice to Plaintiff caused by any alleged violation of the injunction.

To the extent Plaintiff claims it was prejudiced by having to investigate the factual basis for its motion, its argument is unpersuasive. HMR Defendants were not required to keep Plaintiff apprised of HMR Defendants' business activities. This is not a reasonable construction of the injunction, and Plaintiff provides no authority to support its expansive interpretation of it. Just as Plaintiff participated in a reverse merger during the course of this litigation without apprising the HMR Defendants of each step in the process, HMR Defendants are free to go about their business. And, as already explained, Plaintiff has not shown any violation of the Preliminary Injunction. Plaintiff suffered no prejudice as a result of HMR Defendants' actions, and so this *Ehrenhaus* factor weighs against imposition of sanctions.

### 3.3    HMR Defendants Did Not Interfere with the Judicial Process

Plaintiff claims HMR Defendants interfered with the judicial process by engaging in conduct that was not prohibited by the Preliminary Injunction, did not involve any statements made before the Court, and did not cause any discernable harm to Plaintiff. Plaintiff vaguely alleges that HMR Defendants' "conduct has hindered Purple in its efforts to pursue its case to stop irreparable harm," without explaining the alleged hindrance or how HMR Defendants caused such hindrance. The only interference with the judicial process here is Plaintiff coming to this Court with a baseless motion for sanctions.

Further, the facts here are far from other cases in this Circuit where courts have found substantial interference with the judicial process. This is not a situation where HMR Defendants have repeatedly failed to produce discovery, necessitating a costly motion to compel. *See LaFleur v. Teen Help*, 342 F.3d 1145, 1151-52 (10th Cir. 2003) (finding that repeated failure to produce discovery, after the court imposed monetary sanctions for failure to comply, and requiring

defendant to file motion to compel, interfered with the judicial process); *see also Jones v. Thompson*, 996 F.2d 261, 265-66 (10th Cir. 1993) (finding interference with the judicial process when "Plaintiffs repeatedly ignored court orders to submit themselves for depositions, to conclude discovery, and to come prepared to pretrial conferences").  Nor did HMR Defendants engage in any form of discovery abuse.  *See Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1156 (D. Utah 2011) (finding significant interference with judicial process where party "did not merely refuse to produce documents.  It intentionally destroyed documents and attempted to cover-up the electronic deletions within hours after Judge Alba granted Plaintiffs' *third* motion to compel").  Plaintiff has not demonstrated that HMR Defendants interfered with the judicial process, and so this *Ehrenhaus* factor weighs against the imposition of sanctions.

### 3.4    HMR Defendants Lack Culpability

Plaintiff makes repeated reference to the allegation that HMR Defendants made a false statement in Mr. Monahan's declaration regarding his involvement in the mattress review business in an attempt to conceal their purported deliberate flouting of the Preliminary Injunction.  There was no violation of the injunction, there was no subterfuge, and there was no intent to do so.  As already established above, HMR Defendants sold the Honest Site and associated social media to Brooklyn Bedding, and then Mr. Monahan became involved in a separate review site.  The injunction did not prohibit Mr. Monahan from doing this.  There is also no allegedly violative conduct that can be attributed to HMR itself.  HMR merely allowed the sale of the HMR Site and social media, which Plaintiff does not claim violated the injunction.  Plaintiff does not allege that HMR was involved in Mr. Monahan's declaration or the formation of or any content on the Showroom Site.  Neither is there any basis to suggest the declaration concealed anything— Mr. Monahan made no effort to disguise his identity to Mr. Takefman, and Plaintiff received copies of the correspondence with Mr. Takefman less than a week after the declaration was executed.  (Dkt. Nos. 351-14, -15, & -16).

As for Mr. Monahan, Plaintiff overreaches in arguing that he committed perjury in his declaration.  Perjury occurs where a party "(1) gives false testimony; (2) concerning a material matter; and (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United States v. Quarrell*, 310 F.3d 664, 682 (10th Cir. 2002). Inconsistent testimony by itself does not amount to perjury unless it was the witness's intent to give false testimony on a material matter; rather, "inconsistent testimony ordinarily 'provide[s] fertile ground for vigorous impeachment.'"  *Xyngular*, 200 F. Supp. 3d at 1305 (quoting *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008).  A party must establish the elements of perjury by clear and convincing evidence.  *Id.*

As discussed above, the "mattress review business" is not a defined term, and Mr. Monahan's declaration did not provide any details as to what activities constitute being "in" this business.  Plaintiff's evidence on this point consists of (1) Mr. Monahan being married to a manager of Honest Showroom, LLC, which owns the Showroom Site; and (2) Mr. Monahan sending emails to a third party discussing mattress reviews on the Showroom Site.  There is no evidence that Mr. Monahan personally writes or publishes any mattress review or that he had any ongoing role with such at the time the declaration was executed.[4]  And while Plaintiff complains of the <honestshowroom.com> and <honestcoupon.com> web sites, neither of these are review sites and they explicitly disclaim any affiliation with Mr. Monahan.  (*See* Dkt. Nos. 351-13, 351-17.)  Plaintiff's evidence falls well short of establishing that HMR Defendants are culpable, and so this *Ehrenhaus* factor weighs against imposition of sanctions.

### 3.5     A Dispositive Sanction is Not Warranted

As with the third factor, Plaintiff's argument on this factor is predicated primarily on the erroneous allegation that Mr. Monahan committed perjury.  As explained above, he did not.

---

[4]    Plaintiff points out that Mr. Monahan holds himself out in these emails as part of the "Editorial Team" for the New Site.  But this does not mean that he reviews mattresses, as the New Site plainly reviews products other than mattresses as well.  (*See* Dkt. No. 351-8.)

Plaintiff can point to nothing showing a deliberate misrepresentation, and so an advance warning as to the possibility of dispositive sanctions would serve an important purpose here for Mr. Monahan to more carefully collect all the facts and documents available to him before providing testimony.  Without Mr. Monahan making any deliberately false statements, the facts here are more akin to a litigant failing to comply with a discovery order (despite the declaration not even being a part of formal discovery), which ordinarily requires one or more warnings before case-terminating sanctions are appropriate.  *See, e.g., LaFleur*, 342 F.3d at 1152 (dismissing claims as sanction after providing warning that failure to comply with court order would be grounds for dismissal); *Thompson*, 996 F.2d at 265 (upholding dismissal as sanction following warning that repeated violations of discovery orders would result in dismissal).  This *Ehrenhaus* factor thus weighs against imposition of sanctions.

### 3.6    Assuming *Arguendo* Sanctions are Warranted, Lesser Sanctions Would be Effective

Case-terminating sanctions are an extreme remedy, and "[o]nly when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits is dismissal an appropriate sanction."  *Grubbs*, 841 F.2d at 1521 n.7.  The imposition of case-terminating sanctions also carries with it constitutional due process concerns; "[a] judgment imposing sanctions under Rule 37 in violation of the offending party's due process rights is void …. The process due depends on the severity of the considered sanctions.  The concerns posed by a dismissal (or entry of a default judgment) are greater than those presented by the assessment of counsel fees against attorneys."  *FDIC v. Daily*, 973 F.2d 1525, 1531 (10th Cir. 1992).  Due to these constitutional concerns, case law is clear that "'[b]ecause dismissal with prejudice 'defeats altogether a litigant's right to access to the courts, it should be used as 'a weapon of last, rather than first, resort.'"  *Ehrenhaus*, 965 F.2d at 920 (quoting *Grubbs*, 841 F.2d at 1520).  Case-terminating sanctions should only be imposed when the moving party has demonstrated willfulness by clear and convincing evidence.  *See Xyngular*, 200 F. Supp. 3d at 1301.

Plaintiff has not shown that HMR Defendants violated the Preliminary Injunction at all, meaning the only possible ground for imposing sanctions might be Mr. Monahan not being a model of clarity in his declaration to Plaintiff.  But, as explained above, there is no evidence that Mr. Monahan made any willful, deliberate misrepresentations, and there is no evidence that Plaintiff suffered any harm as a result of HMR Defendants' actions.  This does not provide adequate justification for case-terminating sanctions; courts in this Circuit have found that even spoliation of evidence known to go to a critical issue does not necessarily warrant case-terminating sanctions.  *See Genova v. Banner Health*, 2012 U.S. Dist. LEXIS 37100, *7 (D. Colo. Mar. 20, 2012).

The adverse jury instruction requested in the alternative by Plaintiff is not warranted, either. A sanction of adverse jury instructions also "require[s] a finding of 'willfulness, bad faith, or some fault of the offending party.'"  *N.M. Oncology & Hematology Consultants v. Presbyterian Healthcare Servs.*, 2017 U.S Dist. Lexis 130959, *31 (D.N.M. AUG. 16, 2017) (quoting *EBI Secs. Corp. v. Net Command Tech, Inc.*, 85 Fed. Appx. 105, 108 (10th Cir. 2003)).  As there is no willfulness or bad faith on the part of HMR Defendants, there is no basis for an adverse jury instruction.  As Plaintiff has not demonstrated a violation of the Preliminary Injunction and has not demonstrated any intent to mislead Plaintiff, the Court should not impose any sanctions.

### 3.7    There is No Basis for Issuing an Order to Show Cause

As explained above, Plaintiff has not shown that HMR Defendants violated the Preliminary Injunction.  The third element for establishing contempt is thus not met here.  *See Bad Ass Coffee Company of Haw., Inc. v. Bad Ass Coffee Ltd. P'ship*, 95 F. Supp. 2d 1252, 1255 (10th Cir. 2000). Accordingly, the Court should not issue an order to show cause as to why HMR Defendants should not be held in contempt.

### 4.0    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion in its entirety.

- 10 -

DATED this 5th day of September, 2018.

Respectfully submitted,

/s/ Ronald D. Green

Marc J. Randazza (*pro hac vice*)
Ronald D. Green (*pro hac vice*)
D. Gill Sperlein (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

W. Andrew McCullough (2170)
6885 S State Street, Suite 200
Midvale, Utah 84047

Attorneys for Honest Reviews, LLC
and Ryan Monahan

Case No. 2:17-cv-00138-DB

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on September 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Sarah Dones-Caraballo
Employee,
Randazza Legal Group, PLLC